BANKERS' RESERVE LIFE COMPANY *v.* CROWLEY.

Opinion delivered May 17, 1926.

1.  INSURANCE—EFFECT OF FALSE REPRESENTATION.—Where answers in an application for life insurance constituted merely representations, a misrepresentation or omission to answer will not avoid the policy unless willfuly or knowingly made with intent to deceive.

2.  INSURANCE—FALSE REPRESENTATIONS—KNOWLEDGE OF AGENT.— A life insurance company will be bound by a policy where the insured made false representations as to his physical condition, if the agent soliciting the insurance was charged with the duty of writing the data concerning the applicant's physical condition, and, in the course of the examination, learned the applicant's true condition.

3.  INSURANCE—FRAUD IN PROCUREMENT OF POLICY.—If an insurance agent, in collusion with an applicant, even though acting within the apparent scope of his authority, perpetrates a fraud upon the insurance company by making false and fraudulent representations upon which the insurance is obtained, such fraud will vitiate the policy.

4.  INSURANCE—FRAUD—BURDEN OF PROOF.—The burden of proving that a life insurance policy was procured by fraud is upon the insurer.

5.  INSURANCE—PENALTY AND ATTORNEY'S FEES.—The twelve per cent. penalty allowed by Crawford & Moses' Dig., § 6155, is given as damages for a failure to comply with the contract of payment, and the attorney's fee is allowed as compensation for the cost of collecting the debt; and such penalty and attorney's fee are collectable in a chancery court as in any other court.

Appeal from Greene Chancery Court; *J. M. Futrell,* Chancellor; reversed in part.

*Huddleston & Little,* for appellant.

*Jeff Bratton,* for appellee.

HART, J.    This is a suit in equity by the Bankers' Reserve Life Company against J. L. Crowley, administrator of the estate of Elizabeth Crowley, deceased, to cancel a policy of insurance in the sum of $5,000 issued by plaintiff on the 30th day of July, 1923, on the life of Elizabeth Crowley, in which her executor or administrator is named as the beneficiary.    The ground on which the policy is sought to be canceled is that the insured

gave false answers in her application for insurance to the following questions:

"13. Name below all causes for which you have consulted a physician in the last ten years: Illness, flu. Number of attacks, 1. Date, Dec. 1922. Severity and duration, five days. Any remaining effects? No. Attending physician name and address. W. J. Blackwood, Walcott, Ark. 14. Are you in good health as far as you know and believe? Yes. 15. Has any medical examiner or physician formally or informally expressed an unfavorable opinion as to your insurability or health? No. 16. Have you had, or been advised to have, any surgical operation? No. 17. Have you ever been under observation, care, or treatment in any hospital, sanatorium, asylum, or similar institution? No. 21. Have you now, or have you ever had, any other disease or any injury? Give details, dates, and names and addresses of doctors consulted. No."

J. L. Crowley, the husband of Elizabeth Crowley, was appointed administrator of her estate, and filed an answer and cross-complaint against the insurance company, in which he denied the allegations of the complaint, and asked for judgment against the insurance company in the sum of $5,000 with interest from the 13th day of November, 1923, at six per cent.; for 12 per cent. penalty, and for reasonable attorney's fees, costs, and all other general relief.

The record contains a stipulation between counsel for the plaintiff and defendant as follows:

"It is undisputed that questions numbered 13 to 17 inclusive and question number 21 were propounded to the assured in the form set out in the complaint and that she gave the answers thereto in the form set out in, the complaint, and the only question at issue in this lawsuit is as to whether the answers to these questions, or any of them, were false at the time and were known by the assured then and there to be false, and whether they were made with the false and fraudulent purpose and intent to deceive the plaintiff company, and did in fact deceive

plaintiff company and cause it to issue the policy in question.

"It is undisputed that the policy mentioned and described in the complaint was delivered to the deceased on or about September 1, 1923, and that she departed this life intestate while a resident of Greene County, Arkansas, on or about November 13, 1923, and that J. L. Crowley is the duly appointed, qualified and acting administrator of said estate.

"The above and foregoing facts are undisputed, and it will not be necessary to formally introduce the application for insurance, medical examination made by Dr. W. J. Blackwood, the policy itself, nor the appointment of J. L. Crowley as administrator, it being agreed and understood that each of these instruments may be considered by the court as though formally introduced and identified."

After hearing the testimony in the case, the chancellor found the issue on the question of false representations in favor of the defendant. It was therefore decreed that the complaint of the plaintiff should be dismissed for want of equity and that the defendant recover from the plaintiff the sum of $5,000, with accrued interest. The defendant, however, was denied a recovery on his claim under the statute for penalty and attorney's fees.

The plaintiff has duly prosecuted an appeal from that part of the decree allowing a recovery against it. The defendant has taken a cross-appeal from that part of the decree refusing to allow twelve per cent. damages and attorney's fees allowed under § 6155 of Crawford & Moses' Digest.

It is expressly agreed that the answers of the applicant copied above are representations and not warranties. In this connection it may be stated that a noncompliance with a warranty operates as an express breach of the contract of insurance, while false representations render the policy void on the ground of fraud. The questions propounded in the application as set out

above call for answers founded on the knowledge or belief of the applicant, and a misrepresentation or omission will not avoid the policy unless willfully or knowingly made with an intent to deceive. *Metropolitan Life Ins. Co.* v. *Johnson,* 105 Ark. 101.

In *Mutual Aid Union* v. *Blacknall,* 129 Ark. 450, it was held that knowledge affecting the rights of the insured, which comes to the agent of the insurance company while he is performing the duties of his agency in receiving applications for insurance and delivering policies, becomes the knowledge of the company; and the insurance company is bound thereby, where the agent who solicited the business was charged with the duty of asking the applicant questions concerning his physical condition.

It was further held that a life insurance company will be bound under a policy of life insurance where the applicant and insured made false statements concerning his physical condition, where the agent soliciting the insurance was also charged with the duty of writing the data concerning the applicant's physical condition, and where the agent, in the course of the examination, learned the applicant's true condition.

It was also held that if an agent, in collusion with the applicant, even though acting within the apparent scope of his authority, perpetrates a fraud upon the insurance company by making false and fraudulent representations upon which the insurance is obtained, such fraud will vitiate the policy.

The rule established in these cases was expressly reaffirmed in *Home Mutual Benefit Association* v. *Mayfield,* 142 Ark. 240, and *Missouri State Life Insurance Co.* v. *Witt,* 161 Ark. 148.

In the present case Dr. W. J. Blackwood acted for the company in taking the application for insurance and in writing down the answers of the applicant copied above, and also in the medical examination of her. He was likewise the physician of the applicant before she applied for the insurance. Hence, under the principles

of law above announced, in order to cancel the policy and defeat an action on it, it was necessary for the company to prove that the statements and answers as written in the application were false, and that they were intentionally so made by the assured, and that the insurance company relied and acted upon such statements, or that the insured and Dr. Blackwood, as agent of the company, acted collusively in the matter for the purpose of securing the insurance.

In this conection it may be also stated that, under these authorities, the burden of proof of establishing the fraud was upon the insurance company, and, under our rules of practice, findings of fact by a chancery court are allowed to stand upon appeal unless they are clearly against the preponderance of the evidence.

The record shows that Dr. W. J. Blackwood was the agent of the company in taking the application of Mrs. Elizabeth Crowley for insurance. According to his testimony, he had been, given blanks by the agent of the insurance company for the purpose of soliciting insurance. He was also the local medical examiner of the company, and made the medical examination of Mrs. Elizabeth Crowley on the 17th day of July, 1923, and the policy was delivered to her on the 30th day of July, 1923. The premium amounted to $219, and a note for that amount was given, signed by J. L. Crowley, the husband of the insured, and by Dr. Blackwood and another person.

J. L. Crowley and Mrs. Elizabeth Crowley, his wife, were tenant farmers in Greene County, Arkansas. On the 12th day of October, 1923, Mr. Crowley carried his wife to Dr. Olive Wilson of Paragould, Greene County, Arkansas, for examination. According to her testimony, Mrs. Crowley gave her a history of having been sick at intervals for four or five years. She stated that she had had attacks of intense pain in the region of her gall bladder and over her appendix and pelvis. She said that the pains came to her quite often. An examination showed that Mrs. Crowley was very tender over the

gall bladder and over the appendix and over the ovaries. According to the doctor, Mrs. Crowley had been suffering from the date of the birth of her last child. The doctor also stated that she could not say that Mrs. Crowley had gallstones at the time she examined her, but she thought of it. She told Mrs. Crowley that nothing would do her any good, and that an operation would be all that would relieve her pain. She thought that an operation was absolutely imperative. Dr. Wilson also stated that, in her opinion, it would have been impossible, from the condition she found, for Mrs. Crowley's ailment to have been only of six weeks' duration. Basing her judgment solely upon her examination, she is of the opinion that the condition of the gall bladder and the appendix could not have resulted within sixty days' time.

Mr. Crowley then carried his wife to the Baptist Memorial Hospital at Memphis, Tennessee, and on November 8, 1923, she was operated on by Dr. J. W. Bodley. In giving the history of herself she stated at the hospital that she had suffered with irregular attacks of pain in the region of the right shoulder blade, accompanied by indigestion; that these attacks had commenced about six years before and had become more frequent during the three months preceding her entrance to the hospital.

We copy from the testimony of Dr. Bodley the following:

"Q. Is there anything in that operative record to indicate how long she had been suffering from the diseases from which she died? A. No, it is something you can't tell. It is impossible for anybody to tell how long it had existed. It probably had existed for a very long time. Gallstones very often exist for life without symptoms. You may have them and I may have them, and you have no reason at all to consider that you are diseased. On the other hand, you might have a gallstone that might have recently been formed, or it might have been there for life, which would suddenly start to giving you trouble and continue to do so until removed. Now, I will

state, however, that the condition at the time of this operation was such that no one could have lived with it for a great length of time without interference; that she may have had a gall bladder disease all her life, so far as I could tell, or any one else, but the condition of her liver was acute; it was the toxic absorption from this liver, I believe, killed her. Q. How long do you think the liver had been in that condition? A. She could not have lived very long with her liver in that condition. It might have been 3 or 4 days or it might have been a week.''

Mrs. Crowley died on the 13th day of November, 1923. She was operated on for the removal of the gall bladder and the appendix. She was suffering from chronic gall bladder affection and chronic appendicitis at the time she was received in the hospital. According to the physicians at the hospital, indigestion is the symptom of either a diseased gall bladder, a diseased appendix, or a diseased intestine. It is also the opinion of these physicians that Mrs. Crowley had been suffering from the diseases from which she died for several years; probably six years.

J. M. Rhea, a fire insurance agent, testified that he had a conversation with Dr. W. J. Blackwood with reference to the suit of the Bankers' Reserve Life Company to cancel the policy in question on the life of Mrs. Elizabeth Crowley. This conversation occurred on the 6th day of March, 1924. Dr. Blackwood asked him to see a certain attorney at Jonesboro and find out for what he would take the case for the defendant, and to write him.

Dr. Blackwood denied having had any such conversation with the witness Rhea, and denied having any interest whatever in the case. According to his testimony, and that of his two brothers, who are also physicians, J. M. Rhea was a drug addict. Rhea admitted having once been addicted to the use of morphine, but claimed that he had not used any, except in case of sickness, since the year 1918.

Several other witnesses for the plaintiff testified that Mrs. Elizabeth Crowley was sick in the first part of July, 1923, and two of them stated that Dr. Blackwood had been her attending physician.

One witness testified that Mrs. Elizabeth Crowley had told her early in July, 1923, that she was suffering from gallstone colic.

Several other witnesses testified that she was sick for several days in the first part of July, and complained that her neighbors had not come to see her while she was sick. One of them said that Mr. Crowley had sent him for Dr. Blackwood.

Dr. J. W. Blackwood was a witness for the defendant. He denied having told any one that Mrs. Elizabeth Crowley was suffering from an attack of gallstones in the first part of July, 1923, and that he had been called as a physician to treat her at that time, as testified by one witness for the plaintiff. According to his testimony, he had known Mrs. Elizabeth Crowley for seven or eight years, and was called to see her as a physician in December, 1922, and treated her for influenza. At that time he probably made three or four visits to see her. Mrs. Crowley was taken sick in the fall of 1923, and Dr. Blackwood was called to treat her. He found her suffering from ptomaine poison. Her bowels were running off profusely, and she was vomiting. There was nothing at that time which indicated that she had either a diseased gall bladder or gallstones. Two weeks later, after she had recovered from the ptomaine poison, he was again called to see her. She had a high fever, and examination disclosed that she had an infection of the gall bladder following the ptomaine poison. Dr. Blackwood treated Mrs. Crowley for the infected gall bladder, but advised her husband not to have her operated on. Dr. Blackwood did not know that Mr. Crowley had carried her to Memphis to be operated on until after her death.

According to this witness, the diseased gall bladder could have become chronic in eight or ten days. He also

said that a person may have gallstones and not know it, and live a lifetime and die with something else. Dr. Blackwood stated that Mrs. Crowley had the appearance of being a very healthy woman, and denied in positive terms that there was any collusion whatever between him and Mr. Crowley or his wife in taking the application of insurance in question. He stated positively that she did not have gallstones or a diseased gall bladder at the time he examined her for insurance.

J. L. Crowley was also a witness for the defendant. He denied any knowledge that his wife was suffering with gallstones or a diseased gall bladder at the time the policy of insurance in question was applied for. He remembers about his wife being sick in the first part of July, but states that she only had a chill, and was in bed a day or two at the time. He did not know that his wife was suffering with an infection of her gall bladder until Dr. Blackwood treated her in the fall of 1923. Dr. Blackwood advised against an operation. He then carried his wife to Dr. Wilson, and she diagnosed the case as gall bladder infection, and advised an operation. He took his wife to Memphis on November 8, 1923, where she was operated on, and she died four days later. His wife had chills, headaches, and bad colds, but appeared to be a stout, healthy woman.

According to the testimony of Dr. W. P. Hutchins, he went to examine Mrs. Crowley on the 23rd day of August, 1923, as an agent for an insurance company. She was apparently in good health so far as he could tell from the examination that he made of her. He did not complete his examination, because her husband said that he would not take out any more insurance on her life.

More than a dozen witnesses who were neighbors of the Crowleys testified that Mrs. Crowley was a stout healthy-looking woman, and that they never heard of her being afflicted with any chronic ailment. They denied that she had any sick spell of any consequence in the first part of July, 1923. Some of them were visit-

ing at the house every day, and said that her complexion was good and that she looked well. As some of them expressed it, she was tolerably heavy, and generally her face was red and robust.

The testimony is very lengthy, and it is not practical to set it out at length.

The chancellor made a finding in favor of the defendant; and in considering this case we must bear in mind that the plaintiff is not seeking to cancel the policy on the ground that the insured died of a disease she had prior to the execution of the contract of insurance and which she warranted that she did not have, but upon the ground that, when the plaintiff, for the purpose of ascertaining whether it would issue a policy upon her life, asked Mrs. Crowley certain questions which are copied above, she answered them falsely with the intent to deceive the plaintiff company and thereby induce it to issue the policy sued on.

To prove its case, the plaintiff has established by a number of physicians that, in their opinion, Mrs. Crowley had been suffering with gallstones for several years before she applied for the contract of insurance in question. This testimony falls short, however, of establishing as a fact that her answers to the questions copied above were false and that they were so made for the purpose of inducing the company to issue the policy sued on, regardless of their truth. All of her neighbors testified that she was a stout, healthy-looking woman. It is true that she had had sick spells from time to time and, as she expressed it at the hospital in Memphis, she had suffered from indigestion. There is nothing to indicate, however, that she knew that she was suffering from gallstones at the time she applied for the policy in question. Her conduct and that of her husband when she became ill in the fall tends to show that she had not before that time appreciated the fact that she had any serious ailment. During the course of her previous ailments she had been in bed a day or two, and then recovered. Her condition appeared more serious in the fall, and her

husband sent for Dr. Blackwood. He first treated her
for ptomaine poison. She apparently recovered from
that, and in two weeks became quite sick again. Dr.
Blackwood was again called in, and decided that she was
suffering from an infection of the gall bladder, which he
attributed to the ptomaine poison. He told the husband
that an operation was not necessary, and that his wife
would get all right. Mr. Crowley and his wife appear
to have not been satisfied with this diagnosis, but
immediately went to Dr. Wilson at Paragould, Arkansas,
to be examined. After examining Mrs. Crowley, Dr.
Wilson advised an operation, and Mr. Crowley carried
his wife to Memphis for that purpose.

If there had been collusion between Crowley and his
wife and Dr. Blackwood to secure the policy sued on,
or previous knowledge on their part that she was suf-
fering from a serious infection of the gall bladder, it
does not seem that Crowley and his wife would have
gone to Dr. Wilson and subsequently to the hospital at
Memphis, without at least consulting with Dr. Black-
wood. The conduct of Crowley and of his wife, after
she became sick in the fall of 1923, indicates that this
was the first time they had knowledge or belief that she
had any serious ailment. Before that time she had
either treated herself for her periodic spells of sickness,
as is quite common, or she had merely called in the
family physician. The facts in the record do not reflect
that either she or her husband had any knowledge or
intimation that she was suffering from a serious ailment
prior to her attack in the fall of 1923. All the physicians
testify that a person might suffer with gallstones for a
long time without knowing it, and Dr. Wilson was not
sure that Mrs. Crowley had gallstones when he examined
her in the fall of 1923.

Dr. Blackwood and his two brothers, who are also
physicians, testified that the witness Rhea was addicted
to the use of morphine, and was unreliable. Dr. Black-
wood denied in positive terms that he had talked with
Rhea about employing an attorney to represent Crowley

in the case at bar. Even if the facts testified to by Rhea are true, it would not have much probative force to establish collusion on the part of Crowley and his wife. Dr. Blackwood might have known, from his examination, that Mrs. Crowley was suffering from gallstones, and might have concealed that fact from her, because he was not only acting as medical examiner for the company, but was also empowered to solicit applications for insurance and to be paid therefor. Then too he might have become angry because the insurance company was seeking to cancel the policy on account of his alleged fraud in securing it, and for that reason was anxious for Crowley to win the case. In any event, there must be sufficient evidence adduced by the insurance company to show collusion between Dr. Blackwood and the Crowleys in the matter, or that Mrs. Crowley made false answers to the questions propounded to her in her application for the purpose of deceiving the insurance company as to her physical condition and thereby induce it to issue a policy of insurance upon her life. Upon the whole case, we are of the opinion that the chancellor's finding that the plaintiff failed to meet the burden of proof of the falsity of the representations, within the meaning of the law, as above announced, was sustained by the evidence, and for that reason it should not be disturbed on appeal.

Upon the cross-appeal we think the chancellor was wrong in not allowing twelve per cent. damages, together with a reasonable attorney's fee for the prosecution and collection of the loss, as provided in § 6155 of Crawford & Moses' Digest. It is true, as held in *Federal Union Surety Co.* v. *Flemister,* 95 Ark. 389, that no recovery could be had under this statute in the application of the general rule that a chancery court will not enforce penalties except under very peculiar circumstances, which were not presented in that case. There a suit was instituted in behalf of policyholders for the appointment of an ancillary receiver to take charge of the assets of an insurance company in this State, on the ground that

a general receiver had been appointed in the State of Nebraska to take charge of the assets of the company and to wind up its affairs on the ground of insolvency. All parties having claims voluntarily submitted themselves to the jurisdiction of the chancery court, and the liability of the Federal Union Surety Company as surety on the bond of the insurance company was treated by the parties and by the chancery court as an asset of the insurance company in this State. There the main purpose of the suit was the appointment of the ancillary receiver to aid in winding up the affairs of the insurance company in the chancery court, and the filing of the claims was but an incident to the main suit.

In the case at bar the suit was commenced in equity by the insurance company to cancel a policy of life insurance after the death of the insured on the ground of fraudulent misrepresentation on the part of the insured in the procurement of the insurance, and a cross-bill was filed by the administrator of the estate of the deceased policyholder to recover the amount of the insurance provided in the policy. There was a recovery for the full amount of the policy.

The twelve per cent. allowed by the statute is given as damages for failure to comply with the contract of payment, and the attorney's fee is allowed as compensation for the cost of collecting the debt. *Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554.

It is settled by our previous cases that contracts of insurance, from their very nature, are susceptible of classification apart from other contracts, and, under ordinary circumstances, the damages and attorney's fees are as collectible in a chancery court as in any other court. It is only under peculiar circumstances, as in the case under consideration, that a court of chancery will refuse to allow the damages and attorney's fees provided by the statute, as was the case in *Mass. Bond & Ins. Co.* v. *Home L. & A. Co.,* 119 Ark. 102, and cases cited.

The chancellor should have allowed twelve per cent. of the amount of the recovery, as provided by the statute, and a reasonable attorney's fee. We think that $500 for services in the court below and $100 for services in this court would have been a reasonable attorney's fee.

The result of our views is that the decree of the chancellor allowing a recovery for the amount sued for in behalf of the defendant will be affirmed; and that part of the decree refusing to allow the twelve per cent. damages or penalty and a reasonable attorney's fee, as provided in § 6155 of Crawford & Moses' Digest, will be reversed, and judgment will be entered here for the amount indicated in the opinion.

It is so ordered.