THE SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* SAMS.

4-4732

Opinion delivered October 4, 1937.

*Donham & Fulk, Pat Mehaffy* and *Milton McLees,* for appellant.

*Clark & Clark,* for appellee.

GRIFFIN SMITH, C. J.   On a jury's finding that appellee was totally disabled within the meaning of insurance policies which he carried in appellant company, judgment for $1,250 was rendered.   As grounds for reversal appellant urges two propositions:   (1) That if appellee is disabled to any degree by reason of a dilated heart and arterio-sclerosis, such disability was contributed to by appellee's own intemperate use of alcoholic liquors; and (2) that appellee is not totally and permanently disabled within the provisions of the beneficiary certificates sued on.

There are ten assignments of error, but these two are the only ones argued in the brief.

Issuance of the policies is admitted.   It is also admitted that appellee was in good standing at the time the disability is alleged to have begun.   Two policies are involved, one for $1,000 and one for $1,500, each bearing date February 28, 1935.   These certificates were delivered to appellee in lieu of other certificates surrendered by appellee, of older dates.

Section 4 of the certificates provides for total and permanent disability as follows:   "After this certificate shall have been in force for twelve months, if satisfactory proof is furnished to the Association, prior to age

60 of the member, and while this certificate is in full force, that the member is totally and permanently physically disabled and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, or from engaging in any occupation or employment of a gainful nature, and if such disability has then existed for not less than ninety days, the Association will pay to the member in cash one-half the face amount of this certificate, less any indebtedness to the Association, or the cash value if greater, in full settlement, on surrender of this certificate for cancellation. * * * The total and permanent physical disability benefit shall not apply if the disability of the member shall result from self-inflicted injury, while sane or insane. * * *''

It was alleged in the complaint that plaintiff had become totally and permanently disabled within the meaning of the certificate before reaching the age of 60, and that such disability had existed for more than ninety days at the time suit was filed. In an amendment it was alleged that disability was due to arterio-sclerosis and heart disease, and that such disability was not the result of any self-inflicted injury, etc.

The answer contains the following affirmative allegation: ''Defendant states that if plaintiff is disabled to any extent, he was disabled at the time of the issuance of the beneficiary certificate by the defendant, and said disability was caused or contributed to by his own intemperate acts.''

Dr. I. N. McCollum, for the plaintiff, testified that he had examined the plaintiff. ''At the time of the first examination he was suffering from a dilated heart and arterio-sclerosis. I never gave him any medicine, but I advised him what to do. Medicine wouldn't especially help. He has short breath, his heart is considerably dilated and enlarged, and he has high blood pressure, from 190 to 200. About 140 is the average for his age (57 years). The condition he is in would prevent him from carrying on his farming operations without serious injury to his health. He should not do any work requir-

ing the least exertion. Rest is the only thing that will do him any good. Moderate exercise is beneficial to a person in his health. I had not treated him prior to February. I do not know how long he has had this condition, or what caused it. The condition may be caused by the excessive use of alcohol, over-eating, and leading a fast life. If he has a history of using alcohol to excess I would say it would contribute to his heart condition. Any excessive use would contribute to the development of arterio-sclerosis and chronic heart trouble. Ordinarily I don't think this condition prevents him from carrying on his farm and gardening operations nor in the transaction of his business in Conway. He would be able to do that, but should be superficial about his exercise. He shouldn't overdo his work nor drink either—just lead a quiet, normal life. The condition would naturally shorten his life some. A man in his condition can't meet work that requires labor of any kind. I would think it harmful for him to get out, especially in the winter, to look after his interests. He came here today when he shouldn't be out. It's never been proved that alcohol caused arterio-sclerosis; that's just what medical authorities think. I don't think if a man took a drink it would cause his heart condition. Influenza could help cause the condition—it could contribute to it. A person recovered from a severe case of influenza and attempting to do hard labor would suffer a dilation of the heart.''

. Dr. R. G. Herring testified as follows: ''I have known Sams for about 25 years, and live near him. I treated him for influenza sometime in January. He didn't improve rapidly, but came out all right. I don't think he will ever be as good a man physically as he was before this attack. I didn't examine his heart. Have heard of his drinking, but never did see him take a drink, and never saw him drunk in my life.''

W. O. Scroggins, secretary of the local camp of Modern Woodmen of the World, who took appellee's application for membership, testified that appellee contracted influenza in January or February. ''Since he

got up from that he has done very little work. I am a rural mail carrier, and he meets me at the mail box when I bring mail. He looks like a dead man to me. I have seen him on the porch, and he was unable to get out. I passed Sams' house on my route about once a day. I never saw him at work on his farm; he would just be out looking around. I don't know whether he did any plowing, bush-cutting, or whether he made a potato patch or worked a garden. If he did, I didn't see him. His store burned down about four years ago. He rented his farms out every year—rents part and farms part of them. He appeared to be in average health when I delivered the certificates to him two years ago. I know he isn't in good health now like he was then. Sams has taken a few drinks in my presence. I don't know the extent of his drinking. I haven't seen him working any this year, but before, I saw him do all kinds of work, and go fishing, too.''

J. E. Freeman testified: ''I have lived near Sams for about fifteen years and worked with him, helping on the farm. I have worked for him the last thirty days, and off and on several times this year. He can't hold out to do anything very long. At times he was helping haul hay, and while I was pitching it to him he would give out. Would haul a load of hay and the next day he would help me plow and would have to quit before night because he gave out. He has been in bed practically ever since. He has tried to help on the farm within the last thirty days, but he can't hold out. He worked pretty well all along last year and made the average crop in 1935. * * * I don't know about his coming to Conway to transact his business. I guess he does come down to sell and gin his cotton.''

Other testimony to the same effect was offered by appellee. The testimony was, we think, sufficient to make out a *prima facie* case of liability.

On behalf of appellant, testimony was introduced showing that ''last Saturday a week ago'' appellee was on a bus, drinking. In conversation with business men, they hadn't noticed anything the matter with him. On

Monday prior to the date of trial, appellee helped load some cotton and went with the witness to Conway to have it ginned; appellee and witness took a few drinks, but "he could still walk. I kinda helped him in the truck to get him home; he wasn't down." Appellee was seen working about three weeks before the trial. He was plowing. On another occasion he had been seen sowing grain. No difference could be noted in his health. He had been seen picking a little cotton; was in a store "about three weeks ago in an intoxicated condition." Gets intoxicated about twice a month and stays that way for two or three days. Made a crop this year, "doing about everything on a farm that a farmer would do." In October appellee worked all day, plowing up terrace. During the past few years he has been drinking a lot.

The jury's verdict was necessarily predicated upon a finding of fact that appellee was totally and permanently disabled within the meaning of the certificate of insurance, and if there is any substantial evidence to sustain this finding, it cannot, on appeal, be disturbed.

It has frequently been held by this court that "Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. Total disability exists, although the insured is able to perform occasional acts, if he is unable to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all the substantial and material acts necessary to be done in the prosecution of his business, or that his injuries were of such a character and degree that common care and prudence required him to desist from his labor so long as was reasonably necessary to effect a speedy cure." *Missouri State Life Insurance Co.* v. *Snow,* 185 Ark. 335, 47 S. W. (2d) 600; Kerr on Insurance, §§ 385 and 386; *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S.) 635, 21 Ann. Cas. 1029; *Ætna Life Insurance Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335; *Ætna Life Insurance Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310; *Ætna Life Insurance Co.*

v. *Person,* 188 Ark. 864, 67 S. W. (2d) 1007; *Travelers Protective Association* v. *Stephens,* 185 Ark. 660, 49 S. W. (2d) 364.

In *Ætna Life Insurance Co.* v. *Martin,* 192 Ark. 860, 96 S. W. (2d) 327, there is this declaration of the law: "We are of the opinion, and so hold, that under all the facts and circumstances of this record it was a question of fact for the jury's consideration whether appellee was totally and permanently disabled prior to June 5, 1930, and that their finding that he was is supported by substantial testimony." To the same effect is *Sun Life Assurance Co. of Canada* v. *Coker,* 187 Ark. 602, 61 S. W. (2d) 447. In this case the court said: "Generally, it is a question for the jury to determine whether the insured is disabled, the nature of the disability, when it commenced, and its duration, whether total and permanent or otherwise."

In the instant case Dr. McCollum testified that appellee was suffering from high blood pressure, heart trouble, and arterio-sclerosis. Although there are many forms of heart disease, and although this court will not hold as a matter of law that permanent and total disability inevitably follows where it is present, we do know that many forms of heart disease are serious, and that they impair the patient's usefulness, and limit physical activities. Nor is it sufficient for an insurer to show, when existence of the malady is once established, that the assured has periodically discharged some of the duties incident to his business or profession, when at the same time there is testimony that such activities were engaged in at great risk to the assured's physical well-being.

The evidence here tends to show that appellee drank frequently, and he had been seen in an intoxicated condition. It is shown that appellee's intemperate habits extended over a long period of time, and it is insisted by appellant that this is conclusive that appellee's disability was self-inflicted, or that dissipation contributed to his unfortunate physical status. The testimony on this point is not sufficient to establish the contention. It is common knowledge that alcoholic liquors have different effects on different people. While we may indulge

the presumption that injury attends excesses, we cannot presume that in a given case a specific result was bound to follow. There was no medical testimony offered to show that appellee's heart trouble was induced through or influenced by excessive drinking, although a strong suspicion may attach.

In view of the jury's verdict, and in the light of former decisions of this court, the case must be affirmed, and it is so ordered.