JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY
*v.* MAGERS.

4-5638                                      132 S. W. 2d 841

Opinion delivered November 6, 1939.

*Reid & Evrard, House, Moses & Holmes, T. J. Gentry, Jr.,* and *Eugene R. Warren,* for appellant.

*W. Leon Smith* and *Zal B. Harrison,* for appellee.

BAKER, J. For the reason that there is no substantial dispute in regard to the evidence in this case an effort will be made to state the facts as concisely as possible with the respective contentions of the parties.

Magers suffered an accident in 1933 and, since that time, has not been able on account thereof, or on account of disease, to look after his extensive farming interests, except by employing a foreman, and through the assistance of his wife, a daughter, and a son-in-law. At the time of his injury the insurance policies sued on in this case were in full force and effect. For a period of five years following his injury he was paid by appellant, as provided for in the policies, $150 per month. He was also paid some insurance by one or two other companies.

The appellant finally declined to make further payments, insisting that Magers was well able to take care of himself, that his earnings and activities were such as thoroughly to demonstrate the fact that he was not totally disabled and insisted that his policies would lapse unless he paid premiums; the payment of these was suspended for the period during which there was no dispute about his total disability, for which he had received monthly payments amounting in all to about $9,000.

Suit was filed by Magers and judgment had in the circuit court for the amount alleged to be in default, some premiums paid, penalty and attorney's fee. An appeal was taken from this judgment, and it is also alleged and argued upon this appeal that the court erred in fixing the attorney's fee at $800, and that this should be reduced even though the judgment rendered by the trial court be permitted to stand.

Prior to his injury Magers was actively engaged in farming. He had begun his career, near Dell in Mis-

sissippi county, having no property except a team. He finally bought and operated several farms; and at the time of his injury was very active, not only in the management of the farms operated, but as a laborer, making at times, perhaps, an extra hand in all the work as it proceeded. He was active in the making and gathering of crops and in the marketing of the products. He soon had a few cattle and from these he has increased his herd so that he now has approximately one hundred head. Instead of the pair of mules with which he started he now has teams to farm approximately six hundred acres of land, using, as he does, two tractors that he has somewhat recently bought.

For some years his earnings have been, perhaps, phenomenal, at least, it appears so from his bank account offered in evidence by counsel. He explains there had gone into this account from time to time, the $9,000 he collected from appellant, about $4,000 from the Agriculture Administration; $6,000 from the sale of 40 acres of land; $3,000 from 17 acres of land sold; $7,000 from 64 acres sold; and, there was another tract for which he received $3,000. Other insurance companies mentioned paid him in all $6,500. We do not know, and have not taken pains to determine, over what period of time these payments were made, over or during the period of alleged disability. It will be, perhaps, sufficient to say that in addition to these sums of money derived from other insurance and from real estate transactions, substantial amounts of money were earned and entered into appellee's bank account throughout the last several years. The appellee testified, however, that his income tax report shows a loss of $1,000 in 1938. During this period under investigation and within which the bank account had been built up as appellant alleged, appellee had been practically confined to his home. He lives nine miles from Blytheville and sometimes drives his car to that city and home again. The evidence discloses that he has gone to some of his farms only three or four times within a year. Within the last year or two he has had some barns built. At the time the building was going on he was about them only occasionally. He has bought

several tracts of land within the last two or three years. He has carried on this work largely through a foreman that he has employed and whom he has constantly about him since the date of his injury. He stays in his home most of the time, and people who desire to see him call upon him there, and numerous witnesses testified that they nearly always found him lying down. The foreman employed reports to him daily and sometimes several times during the day for instructions and advice.

In addition to share-croppers, he employs day labor. Prior to his injury when he always made the extra hand, he was the first out on the farm in the early morning, and the last to leave at the end of the day; he made up his own payrolls, paid off his men, took his cotton samples to markets and sold his cotton. All the enterprises in which he was interested received his personal attention. He had no foreman.

Someone else now always gathers his cotton samples; the buyers come to him to purchase his cotton; his foreman makes up the pay roll for labor and the hands are paid off at some store, probably the place of business operated by his son-in-law. He signs one check only for the total amount, having to forego attention to details. During all this period he has not been known to have performed any kind of labor.

There is evidence that during the last year or two he made some kind of a pleasure trip somewhere in the west. On this trip he says he had the entire rear seat of the car to himself where he could sit or lie as might be found most comfortable. It is said he made a trip to Hot Springs, and he testified to that himself, explaining that he went there hoping to be benefited by the baths, but found he was unable to take them and returned home. He made one trip to Mayo Bros.' Clinic and some trips to Dr. Willis Campbell's Clinic at Memphis, Tennessee. There was no insistence by appellant that these trips or journeys were unnecessary or that they were in the nature of pleasure trips, but it is argued most forcefully that, notwithstanding the physical impairment he may have suffered and the extent thereof he still retains physical vigor and capacity to augment

his growing fortunes. In truth, we are asked to say that these matters clearly demonstrate that Magers was not, and is not now permanently and totally disabled. This statement is made by counsel for appellant: "We believe that notwithstanding the injury Magers has suffered the true test is his actual actions. The results are what the court looks at in determining when a man is totally and permanently injured." There follow from this announcement statements developing this theory upon which the appellant defends this action.

This contention made by appellant arises out of its understanding of an announcement of this court in the decision of certain cases cited. For instance in *Missouri State Life Insurance Company* v. *Snow*, 185 Ark. 335, 47 S. W. 2d 600, it was said: "This is in substance appellee's contention as testified to by himself and it follows conclusively that he was not permanently and totally disabled from engaging in gainful occupation." The record disclosed Snow had continued his business affairs, even through the period of alleged disability much as he had prior thereto.

Without developing the particular facts presented and upon which the court acted when the above declaration was made we suggest now that the statement had reference to the physical condition of Snow, who, although he had suffered some serious impairment, was still able, and did continue to operate the business in which he had been engaged, giving it his individual and personal attention much as he had prior to the date of the impairment which he thought entitled him to recovery on the disability provision of his policy. Appellant, also, cited the case of *Ætna Life Insurance Co.* v. *Person*, 188 Ark. 864, 67 S. W. 2d 1007. The insured in that case was the victim of arrested tuberculosis. It is stated by appellant that the record in the Person Case reflected that the insured actually farmed during the time that he contended that he was totally and permanently disabled and his farm operations consisted of cultivation of 150 to 200 acres of land. He employed a foreman to whom he delegated a "good deal" of the management. The closing paragraph of the court's an-

nouncement is pertinent: "The evidence is undisputed that not only was appellee able to manage the farm in the usual and customary manner but was able to and did engage in other lines of business without hurt to his physical condition." The last cited case is perhaps more nearly in point or in line with the Magers Case than others relied upon, but there is a very clear distinction from the Magers Case in many particulars.

Before Magers' injury, he never employed a manager or foreman, and he did not act solely in a managerial capacity, he actually labored with those whom he had employed, adding his own energy to theirs in the development of his farm and production of his crops. That all ceased from and after the date of his injury. Instead of continuing even in a managerial capacity, he has had to employ one to act solely as manager because of his own incapacity. So we find him not engaged in his usual or ordinary activities in which he found pleasure and profit prior to the accident or disease from which he suffers.

In the more recent case of the *Ætna Life Ins. Co.* v. *Norman,* 196 Ark. 381, 117 S. W. 2d 728, this court clearly distinguished the facts from those in the Snow Case, and the Person Case above mentioned. Norman was engaged in the banking business, but his employment was not such that he remained in the bank and attended to duties there. He was an "outside" man whose duties required him to attend to business such as making appraisals of personal property and real estate and other matters of like kind. He was principal owner of the bank and might have chosen some inside position had he preferred to do so. He suffered from arthritis to the extent that he was unable to continue in the performance of the duties as "outside" man and it was held that because of his disability he should be permitted to recover.

If we should follow appellant's theory in this case we would have to criticize this opinion and say that Norman was able to hire some one to attend to the duties that formerly he had performed himself and that he

should not have been permitted to recover and the opinion should now be overruled.

Numerous cases are cited, most of which, we think, are authorities justifying the trial court in submitting the evidence to the jury for determination of the facts. Some of these cases are: *Travelers Insurance Co.* v. *Thompson*, 193 Ark. 332, 99 S. W. 2d 254; *Monarch Life Insurance Co.* v. *Riddle,* 193 Ark. 572, 101 S. W. 2d 781. To cite all that are appropriate would look like a table of cases on insurance.

Another recent case is *Ætna Life Ins. Co.* v. *Martin,* 192 Ark. 860, 96 S. W. 2d 327. A pertinent comment in this case is that Martin by reason of diabetes had become incapable of supervising personally his contracting business. His business would perhaps have perished in his hands if he had not employed some foreman or overseer. But he was permitted to have a recovery.

One most interesting case is the case of *Metropolitan Life Ins. Co.* v. *Weathersby,* 190 Ark. 1050, 82 S. W. 2d 527. The insured was a distributor of peanuts. He employed men to travel about the country selling and delivering his merchandise in stores suitable for this trade. At the time he became afflicted he had a good sales organization. He was so badly afflicted that he could, with great difficulty, dress himself, yet he carried on his business. He sometimes lay on a bed or cot and directed others in the preparation of his merchandise for delivery and sale. To one not acquainted with the methods employed by Weathersby, his business apparently went on in much the same way it did when he was in good health. If the proper test for determining liability had been his bank account it would perhaps have shown no difference, or at least no impairment from what it had formerly been. We said in that case in response to a defense very similar to one made here: "This contention assumes that appellee procured insurance for the success of his business; whereas he procured insurance for himself against bodily disease which might prevent him from wholly performing all the substantial and material duties connected with his business or avocation or

against illness of such character or degree that common prudence would require him to desist from his labors."

So we reiterate anew the principle that insurance to compensate a permanent and total disability is not insurance upon one's business, but it is a guaranty of continued personal fitness, enabling one to employ and adapt not only his mental qualification and mental preparation for his business; but also the continued use of physical vigor and energy in the performance of manual pursuits connected with his business as well, to the extent that he may perform all the substantial and material acts necessary to be done in the conduct of his business in the usual way. The insurance contract is not discharged because he may be able to hire a substitute or proxy. *Mutual Life Ins. Co. of N. Y.* v. *Dowdle,* 189 Ark. 296, 71 S. W. 2d 691.

Such has been the trend of our decisions; even those cited by appellant and many others. It follows, therefore, that there is no error in the submission of questions of fact to the jury for determination. The evidence is ample and of substantial nature to support the verdict rendered.

The objection founded upon the fact that the trial court read to the jury a single instruction in response to an inquiry pertaining thereto is without substantial merit. It appears, moreover, that there was no objection urged thereto until after the jury had retired. When objection was made it was to the effect some material matters had been omitted by the court in explaining the effect of the instruction. The jury returned a second time and the entire instruction was read. It is argued now that failure to read all instructions amounted to placing of undue emphasis upon the one read. There was no suggestion at that time that all instructions should be reread by the court.

Nor is there any merit in the allegedly improper admission of testimony later withdrawn from consideration of the jury. There could not have been any misconception by the jury as to the court's meaning in directing the jury to give no consideration to the evidence questioned. We must and do hold the jury gave the admoni-

tion of the court due regard. Besides, we are not convinced the evidence was improper.

One instruction appellant insisted upon to the effect that "if the insured, although he had been injured, was not disabled to the extent that he has been prevented from the prosecution of his business and has not been rendered unable to engage in gainful occupation he was not entitled to recover." This is not a correct statement of the law and is in conflict with all the announcements of the courts defining total and permanent disability. The ruling was correct in refusing to give the instruction.

The only other matter arises from the alleged error of the trial court in fixing the attorney's fee for the sum of $800. Some witnesses testified that a reasonable fee in this case would be $1,000, but the trial court no doubt attempted to follow our former announcements in such matters that although due consideration should be given to this testimony it was deemed advisory only and by no means conclusive. The record in this lawsuit is not lacking in minute details in the development of appellant's theory. It would seem therefrom every business contact of the appellee, or other activity has been subjected to the closest scrutiny. As instances, several physicians were examined, and, at least, one of them testified on two or three occasions by depositions. Again, we have noticed that Magers' bank account has not only been offered in evidence, but it has been very carefully analyzed by counsel on both sides. All other matters were given the same close attention.

In proper cases plaintiff is entitled to recover a penalty of 12 per cent. of the money judgment, and reasonable attorney's fee to be fixed by the court. Section 7670, Pope's Digest. These recoveries for penalty and fees, were, no doubt, intended by the legislature to prevent defenses for delay or other vexatious litigation, and as a restraint against unreasonable contentions of the insured for he may not recover these items unless he recovers first the amount sought by suit.

Our attention is called to the fact that this is the fifth suit instituted to require payment of installments

claimed, four having been dismissed upon resumption of payments. A reasonable fee is to be determined by the particular circumstances that appear.

It should not only be commensurate with time and amount of work required, but also with the ability present and necessary to take care of or meet the issues that arise. The fee is not fixed for, nor by the attorney, but for the insured and by the court. To be reasonable, it should not be so small or low, that well prepared attorneys would avoid that class of litigation or fail in the employment of sufficient time for thorough preparation, but should be for the purpose of compensating the insured in engaging counsel thoroughly competent to protect his interests.

Our last announcement in regard to fees appears in *Metropolitan Life Ins. Co.* v. *Leach,* 198 Ark. 531, 129 S. W. 2d 588. We reduced the fee for the obvious error apparent in that the trial court had in mind the prospect the case would be appealed. There was no appeal except from the order or judgment fixing the fee. That condition is not in this case; besides, the recovery in the instant case is not limited to the amount of money for which execution might issue.

As above indicated it fixes as a continuing liability to run as long as the disability established by proof exists, unless limited by the policies.

Almost the same facts were present in the case of *Pacific Mutual Life Ins. Co.* v. *Jordan,* 190 Ark. 941, 82 S. W. 2d 250. In that case the court gave due consideration to the establishment of this contingent liability. There was cited therein the case of *Old Colony Life Ins. Co.* v. *Julian,* 175 Ark. 359, 299 S. W. 366. The fee fixed by the trial court in the cited opinion was sustained on appeal notwithstanding it was greater than money judgment.

So, also, we find approval by the court of a similar situation in the case of *Equitable Life Assurance Society of United States* v. *Dyess,* 194 Ark. 1023, 109 S. W. 2d 1263.

After a full consideration we can not say the fee is excessive.

Affirmed.