THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
*v.* PHILLIPS.

4-6245                                      149 S. W. 2d 940

Opinion delivered March 17, 1941.

*Louis W. Dawson* and *Moore, Burrow & Chowning,* for appellant.

*Sid J. Reid,* for appellee.

GRIFFIN SMITH, C. J. This is a second appeal.[1] In March, 1940, the judgment procured by Phillips (who alleged total and permanent disability and obligations arising by reason of appellant's contract of insurance) was reversed and the cause remanded for refusal of the trial court to require the plaintiff to submit to X-ray examinations in Pine Bluff or Little Rock.

Cumulative monthly payments which would be due appellee if he is entitled to recover were added to the judgment in the instant case. The insurance company contends it was entitled to an instructed verdict. Instead, the court gave the plaintiff's Instruction No. 1, shown in the margin.[2]

The contractual provision as to disability requires payment by the company if the insured is suffering from an impairment of body which continuously renders it impossible for him to follow a gainful occupation.

The policy was issued in 1927. The following year Phillips moved from McCrory to Sheridan. His business in McCrory was "ice moving." In 1935 he and Vance Thompson built an ice plant at Benton, each owning a half. It was operated less than a year, then leased, and still later sold. For three years appellee has owned the Sheridan ice plant. Shortly before trial its capacity was enlarged. When Phillips was asked on cross-examination if he did not testify in the first trial to having paid Thompson $3,000, earned through operation of the plant, he replied: "I said I probably had liquidated some indebtedness, but I don't think I designated the way I got the money." Asked where the money came from, he replied: "Well, I just don't know."

Appellee had owned an ice plant at Rison. It was destroyed by fire in 1936, after having been operated about two years. He also owned a liquor store on the outskirts of Sheridan. Its operation extended over a period

[1] *Mutual Life Insurance Co.* v. *Phillips*, 200 Ark. 77, 137 S. W. 2d 910.

[2] "You are instructed that the question for you to decide in this case is, Was the plaintiff, L. A. Phillips, totally and permanently disabled on the . . . day of December, 1938, and if he was permanently and totally disabled at the time, did that disability continue from that time up until this and it is reasonably certain that his disability will continue the rest of his life."

of eighteen months. He also owned a filling station, and leased it.[3] Until three months before the trial from which this appeal comes appellee and his wife had deposited money in a Sheridan bank, but the practice had been changed. Although conceding that his business was profitable, appellee professed not to know where surplus money was kept other than that his wife took it to Little Rock. He was equally indefinite regarding a former illness. He had served in the navy and drew $30 monthly disability compensation, but did not know what the nature of his disability was. Other essential facts had been "forgotten" by appellee, or he did not know the answers to material questions. He had applied for additional insurance while partially disabled, but insisted the applications were made the year before. Throughout the cross-examination there is an obvious lack of candor.

Appellee is afflicted with duodenal ulcers and is partially incapacitated. Claim for benefits was recognized by appellant and certain payments made. These were discontinued in December, 1938, the company's conten-

---

[3] Appellee testified that he did not deposit in any bank money coming from operation of the liquor store. There were the following questions and answers: Q. Don't you have any bank account on your liquor business? A. We don't depend on the bank to pay our bills. Q. You mean to say that it takes all of that to pay your bills? A. No, I didn't say that. Q. What do you do with the money over and above that needed for expenses and paying bills? What disposition do you make of the surplus money? A. Just live on it and buy an automobile once in a while. Q. Do you run a bank account in connection with any of your business enterprises? A. No. Q. Do you carry a bank account? A. Yes, but not in connection with any of my business. Q. What does your bank account consist of? What items go into it? A. Just money we don't need to pay bills with. We sometimes pay by check, but about all of the money I put in the bank is money I think I can keep for a few days. Q. The money realized from your liquor store and ice plant and from any other business enterprise that you have—you first use the profits to pay bills and buy automobiles and use for living expenses, and if you have a surplus you put it in the bank? A. Yes. Q. Do you do business with the bank in Sheridan? A. No. Q. Where do you keep your bank account? A. Little Rock. Q. With what bank? A. Mr. Chowning, I had rather not answer that question. [The court ruled that the question should be answered.] The witness then replied that he didn't have any bank account personally. Q. What did you mean a moment ago when you said you kept it in Little Rock? A. My wife has a bank account in Little Rock. It is a trust fund for our child. I don't know anything about it—what it is. [Appellee further testified that he did not know what bank in Little Rock the account was with.] Q. So all the surplus money you make in the course of the operation of your business is turned over to your wife? A. All we make; she gets that.

tion being that appellee had recovered to such an extent that his disability did not fall within the terms of the policy. He had formerly weighed over 200 pounds. At trial his weight was slightly in excess of 160 pounds.

In spite of the inconveniences occasioned by the ulcers, appellee continued his business activities, increasing his holdings and expanding their capacities. He drove an automobile when necessary, made frequent trips to Little Rock and other places, and in many respects gave to his commercial enterprise executive supervision. The attention was sufficient to make them profitable and to improve appellee's financial status.[4]

Evidence that appellee's disability did not prevent him from following a gainful occupation is abundant; nor is it shown that such activities were at the price of extraordinary physical suffering, or that appellee worked only because of necessity. We have said that total disability exists if the insured is unable to perform any substantial part of the work connected with his or her business. While the word "impossible"—impossible to follow a gainful occupation—is used in appellee's policy, the term is to be construed by courts in the light of facts incident to each case, and it may sometimes be synonymous with "impracticable."

If the disease it is claimed causes disability (although not compelling inactivity) is such that slight effort might reasonably be expected to result disas-

[4] The following is copied from appellant's reply brief:

"At a time when the appellee was seeking an allowance from this appellant under the policy involved in this suit of a claim for total and permanent disability, he was, without the knowledge of this appellant, applying for *and passing successful physical examinations* for life insurance in two other companies. The Pyramid Life Insurance Company of Little Rock and the National Life & Accident Insurance Company of Tennessee.

"The policy with the Pyramid Life was issued and was in force at the time of this trial. A policy with the National Life & Accident Insurance Company would have been issued except for the fact that Dr. O. W. Hope of Sheridan, who examined appellee for the company, happened to discover three or four days after having found him physically fit for the insurance and mailed his approval in to the company that Mr. Phillips had filed a claim with this appellant for total and permanent disability. He then passed this information along to his company, which prevented an issuance of the policy." [Appellee insists the testimony upon which these statements were predicated was incompetent. Since our decision is not dependent upon the evidence its competency is not determined.]

trously, the insured would not be required to take the risk, although admittedly to do so would not be impossible.

The case at bar is controlled by the decisions in *Missouri State Life Insurance Co.* v. *Snow,* 185 Ark. 335, 47 S. W. 2d 600; *Lyle* v. *Reliance Life Ins. Co.,* 197 Ark. 737, 124 S. W. 2d 958; *Ætna Life Ins. Co.* v. *Person,* 188 Ark. 864, 67 S. W. 2d 1007; *Metropolitan Life Insurance Co.* v. *Guinn,* 199 Ark. 994, 136 S. W. 2d 681; *New York Life Insurance Co.* v. *Ashby,* 199 Ark. 881, 138 S. W. 2d 65; *General American Life Ins. Co.* v. *Chatwell,* 201 Ark. 1155, 148 S. W. 2d 333.

The judgment is reversed, and the cause is dismissed.