FRANKLIN LIFE INSURANCE COMPANY *v.* BURGESS.

4-9654                                    245 S. W. 2d 210

Opinion delivered January 14, 1952.

*Surrey E. Gilliam* and *Melvin E. Mayfield,* for appellant.

*Mahony & Yocum,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, John P. Burgess, recovered a verdict and judgment against appellant, Franklin Life Insurance Company, in the sum of $1,100 for eleven months total disability under a health and accident insurance policy, together with twelve per cent penalty and attorneys' fees.

The policy was issued in 1946 pursuant to an application stating appellee's occupation as "Mgr. Burgess & Son Dry Goods and Groceries" and his exact duties as "Managerial & Clerical". At that time appellee was a clerk in the Burgess store at Strong, Arkansas. The store handled groceries, dry goods, feed, fertilizer, hardware and other items usually carried by a general store in a small town. As a general clerk appellee worked in all departments of the store. In assembling and selling merchandise he was required to load and unload such articles as farm implements, fertilizer, feed and other heavy items.

Appellee moved with his family to Conway, Arkansas, in November, 1948, and put in a neighborhood

grocery store. While visiting relatives near Strong on January 22, 1949, appellee received injuries to his left foot by the accidental discharge of a shotgun necessitating the amputation of the limb nine inches below the knee. Phlebitis, an interference in circulation of the blood, developed in the limb resulting in complications which existed at the time of the trial in July, 1951. Physicians described the limb as cold, tender, swollen and stated that it pits on pressure as the result of fluid in the soft tissue. The entire area of the stump is painful on pressure. The stump is stiff and drawn backwards in a fixed position at an angle of ninety degrees to the thigh, and any attempt at manipulation is very painful. Appellee cannot wear an artificial limb. The results of an attempt to prepare the injured limb for an artificial limb by amputation at the knee would be doubtful and dangerous on account of the phlebitis. Doctors have advised appellee against the operation.

Prior to his injury appellee did practically all of the work in connection with the operation of the store except the bookkeeping which was done by his wife. The store building is 22 x 40 feet and adjoins a six-room dwelling occupied by appellee and his family. Merchandise is kept in shelves which extend up eight and one-half feet from the floor on one wall and six feet on the opposite wall. A ladder is used in removing articles from the higher shelves. Appellee handled a general line of groceries, bottled drinks and other articles usually carried in such stores. The canned goods and other items such as sugar, potatoes and flour were delivered to the store in cases, cartons and sacks weighing up to one hundred pounds. These were handled by appellee in distributing the merchandise to the shelves and other places about the store where it was kept for sale. Appellee opened the store at six a. m. He did all the janitor work, buying, most of the selling and all the heavy work, including the transfer of cases of bottled drinks to and from a storage room.

Following his injury, appellee resumed such light duties as he was able to perform around the store about

June 1, 1949. He cannot walk without crutches and the arch of his right foot is broken down. He can watch the store when his wife and other clerks are out, make change and accept payments for merchandise. He can sell small items such as a cold drink or package of cigarettes, but cannot wait on customers generally. He can no longer handle merchandise delivered in case lots or large sacks, make sales of heavy articles, place and remove merchandise from the higher shelves, or do any of the work of cleaning up the premises. His wife has opened the store since his injury and, with the assistance of her nephew and sister, has performed the major portion of the duties formerly performed by appellee. According to the medical testimony, appellee, while sitting in a chair, could perform such duties as answering the phone or using the cash register and adding machine for only short periods of time without suffering intense pain.

Dr. F. L. Irby testified on behalf of appellee as follows: "Q. We have enumerated to you, doctor, what he did before and after his injury, and you have told about the things you thought he could perform; would you say there are any substantial part of his duties that he can perform in the usual and ordinary way that he performed them before he lost his leg? A. No, sir, the regular duties that he performed in the grocery business before that, he can't do it now; there are some little things that he might be able to do, but the regular duties, he is unable to do them today. Q. I am talking about, now, doctor, the things that he can do now, can he do those in the usual and ordinary way that he did them before he got hurt? A. No, sir."

On cross-examination the doctor testified: "Q. In general, he could do any kind of work about that store that didn't involve manual labor, lifting heavy articles, that didn't require him to be engaged in it for any extended length of time? A. He could do anything that he didn't have to walk and use his hands to do; if it was something that he could show, or tell them what to do he

could do it, but if he had to use his hands, or walk and get something, or handle things, and move them he is not able to do it.''

Upon being asked to give his opinion as to appellee's disability, Dr. L. G. Fincher stated: ''We assume that when a man can't do the usual duties of his occupation he becomes disabled. Now, you specifically mention— you specify certain things he did—I have worked in the same kind of store that he has, and I know exactly what his duties are, and he can't do the work in that store. I could admit right quickly that he might have it done, but he can't do it, and that's why I assume that he is disabled. I just feel that he can't do his work as he did it before his injury.''

At the outset appellant recognizes the rule followed by this court in numerous cases as stated in *AEtna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. 2d 310: ''Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and material acts of his business or the execution of them in the usual and customary way. *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N.S.) 635, 21 Ann. Cas. 1029; *Brotherhood of Locomotive Firemen & Enginemen* v. *Aday,* 97 Ark. 425, 134 S. W. 928; and *AEtna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335. . . .

''The object to be accomplished was to indemnify the insured for loss of time for being wholly disabled from prosecuting his business. It has been well said that, if the language used was to be construed literally, the insurer would be liable in no case unless the insured should lose his life or his mind. Of course, as long as he is in possession of his mental faculties, he is capable of transacting some part of his business; but, as we have

already seen, he was not able to prosecute his business within the meaning of the policy unless he was able to do all the substantial acts necessary to be done in its prosecution.''

However, appellant contends the policy here involved is not one where total disability is insured against so that the courts are free to define the nature and extent of the disability. It is argued that appellee was insured against disability resulting in total loss of time, that the language of the policy must be construed literally and that appellee is precluded from recovering unless he was wholly and continuously disabled to perform each and every duty pertaining to his business or occupation.

The policy provides: '' 'MONTHLY DISABILITY INDEMNITY' PART I. If injury or illness as before described shall wholly, necessarily and continuously disable the Insured and prevent him for a period of ninety days from performing each and every duty pertaining to his occupation, the company will allow the monthly indemnity for the period the Insured shall thereafter be so disabled but not exceeding twelve consecutive months. The first payment of such indemnity shall be made one month following the ninety-first day of such disability and succeeding payments shall be made each month thereafter during such period.

''After the payment of monthly indemnity for the period of twelve consecutive months, as aforesaid, the company will continue the payment of the monthly indemnity of the same amount so long as the insured shall be wholly, necessarily and continuously disabled and prevented by such injury or illness from engaging in any occupation or employment for wage or profit.

''Indemnity is not payable for the first ninety days of any period of disability as defined in Part I.'' In Part II, which follows, the disability for which indemnity is payable in Part I is referred to as ''total disability''.

The Spencer case, *supra,* involved facts and a disability clause somewhat similar to those in the instant case. There are many other decisions to the same ef-

fect. A few of these are: *Mutual Life Ins. Co.* v. *Marsh,* 186 Ark. 861, 56 S. W. 2d 433; *Metropolitan Life Ins. Co.* v. *Weathersby,* 190 Ark. 1050, 82 S. W. 2d 527; *AEtna Life Ins. Co.* v. *Martin,* 192 Ark. 860, 96 S. W. 2d 327; *North American Accident Ins. Co.* v. *Branscum,* 209 Ark. 579, 191 S. W. 2d 597.

Appellant relies on such cases as *Missouri State Life Ins. Co.* v. *Snow,* 185 Ark. 335, 47 S. W. 2d 600; *AEtna Life Ins. Co.* v. *Person,* 188 Ark. 864, 67 S. W. 2d 1007; *Metropolitan Life Ins. Co.* v. *Guinn,* 199 Ark. 994, 136 S. W. 2d 681; and *Mutual Life Ins. Co. of New York* v. *Phillips,* 202 Ark. 30, 149 S. W. 2d 940. While the risks insured against in some of these cases are slightly different from those involved in the instant case, the company was relieved from liability because, under the particular facts, it was shown that the insured continued his occupation after the alleged disability by performing the substantial and material acts and duties of his occupation in the usual and customary manner.

We hold that appellant insured appellee against "total disability" as defined by this court in the cases cited, that the question of appellee's ability to perform the duties of his occupation was properly one for the jury under evidence that is substantial and sufficient to support the verdict.

Error is assigned in the giving of appellee's requested Instruction No. 1. After quoting the pertinent provisions of the policy, this instruction concludes: "The provisions of the policy that I have quoted relating to disability does not mean a state of absolute helplessness. But it means that if there was any substantial part of the material acts necessary to be done pertaining to his occupation, that he could not perform in the usual and customary way, he would be disabled within the meaning of the policy." The interpretation placed on the policy by the trial court in giving this instruction is in conformity with the rule laid down in the cases previously cited. It would unduly prolong this opinion to set out the factual differences in the numerous cases cited by appellant and those in evidence here. In its

argument against the giving of this and other instructions, appellant contends the policy is a special one of limited liability, that appellee was rated as a preferred risk and the policy issued at a reduced premium because of the statement in the application as to occupation and duties. There was no contention that fraud was practiced on appellant in the execution of the application. There is no proof that appellee's occupation did not entitle him to be rated as a preferred risk nor is there any evidence that the premium would have been higher had he not been so rated. So we find no merit in these contentions.

Error is also assigned in the giving of appellee's requested Instruction No. 5, which reads: "The definition of the word 'clerical' includes, 'CLERK: An assistant in a shop or store; a salesman or saleswoman, especially in a retail store.' " Also, in the refusal to give appellant's requested Instruction No. 19, which reads: "The jury are instructed that the word 'clerical' is a word having a number of meanings, one of which is the doing of paper work, copying and keeping records and doing office work of that nature." The court also instructed on the meaning of "managerial". We think the jury was entitled to know whether appellee's duties as a clerk at the time of the issuance of the policy were included in the "clerical" duties as specified in the application. While it would have been proper to give appellant's requested Instruction No. 19, we find no prejudicial error in refusing it in the circumstances. It is undisputed that appellee did none of the work included in the definition requested—so the instruction really had no bearing on the issues in the absence of a plea of fraud.

The trial court refused to give numerous instructions requested by appellant which would have barred recovery unless the jury found appellee to be disabled in accordance with the literal terms of the policy. The requested instructions were in conflict with other instructions given on this issue and were properly refused. The court also properly modified several instructions

842

given at the request of appellant so as to correctly define the terms, "totally disabled", "total disability", "continuous disability" and "continuously disabled" in accordance with the meaning of such terms as set out in appellee's requested Instruction No. 1.

Appellant also insists that the question of appellee's disability to perform his occupation was submitted to the jury on the wrong theory in that appellee had two separate occupations instead of one. Appellee's occupation was listed in his application as manager of a general store, but he was then only a clerk. At the time of his injury he was the operator of a grocery store. Since his duties were listed as managerial and clerical in the application, appellant argues that appellee's occupation was dual since he was both manager and clerk of his store and that the undisputed evidence shows that he could perform all managerial duties. Appellant relies on *AEtna Life Insurance Co. v. Orr*, 205 Ark. 566, 169 S. W. 2d 651, where the insured's occupation was stated as physician and surgeon and there was testimony showing that he could perform his duties as a physician in the usual manner, but could not perform his duties as a surgeon. In reversing the case on another point and remanding for a new trial, we held that insured was engaged in dual professions and that he could not be held to be totally disabled unless he was disabled both as a physician and as a surgeon. Appellee had only one occupation, either at the time the policy was written or at the time of his injury, although his duties were many. We do not agree that the evidence conclusively shows that appellee could perform the material and substantial duties of a store manager in the usual and customary way. The doctrine of dual occupations or vocations announced in the Orr case is inapplicable here.

Appellant also argues that the attorneys' fee assessed by the court is shockingly excessive, while appellee says an additional fee should be allowed for services rendered on this appeal. The evidence on this issue shows that there were two trials of the case, that two members of the firm representing appellee spent two

days in the first trial and that three members of the firm participated in the last trial which lasted three days. It was also shown that two of the attorneys spent two or three days' office work in preparation for trial. Several attorneys testified that in their opinion a fee of $1,500 to $2,000 would be fair and proper. In fixing the amount, most of them took into account the assertion that a recovery in the instant case had established appellee's right to recover future disability payments for life or, at least, a potential right to such final recovery.

In arriving at a fee of $1,625 the court stated: "As I understand the testimony from the attorneys testifying here, they fixed $1,500 as the minimum. I think it would be the better policy here to take into consideration the time spent in the preparation of the case and the trial of the case, and I am going to calculate that on the basis of thirteen days spent and on the basis of $125 a day, and that would make the sum of $1,625; and that will be the fee fixed by the court for the plaintiff's attorneys —$1,625. By that means I am getting away from any speculation as to that future right there under the policy."

We have held that the object of the statute (Ark. Stats. § 66-514) is to allow plaintiff a reasonable sum for a competent attorney, or firm of attorneys, and does not contemplate a fee for two attorneys, or two firms of attorneys. *The Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554, 164 S. W. 720. We have also said that the amount should not be fixed on the basis that the fee was contingent. *AEtna Life Ins. Co.* v. *Taylor,* 128 Ark. 155, 193 S. W. 540. In discussing the fee to be allowed, the court said in *John Hancock Mutual Life Ins. Co.* v. *Magers,* 199 Ark. 104, 132 S. W. 2d 841: "It should not only be commensurate with time and amount of work required, but also with the ability present and necessary to take care of or meet the issues that arise. The fee is not fixed for, nor by the attorney, but for the insured and by the court. To be reasonable, it should not be so small or low, that well prepared attorneys would avoid that class of litigation or fail in the employment of suf-

ficient time for thorough preparation, but should be for the purpose of compensating the insured in engaging counsel thoroughly competent to protect his interests."

We have allowed fees in excess of the amount of recovery in cases where the determination of the questions involved also determined the liability of the company for future disability payments under the policy. *Old Colony Life Ins. Co. v. Julian,* 175 Ark. 359, 299 S. W. 366; *Pacific Mutual Life Ins. Co. v. McCombs,* 188 Ark. 52, 64 S. W. 2d 333. It is noted that the second paragraph of Part I of the policy provides for payment of monthly indemnity after the twelve-month period provided in paragraph one on certain conditions and uses language somewhat different from that employed in the first paragraph. It is true that a recovery in the present suit preserves appellee's right to seek further recovery for future installments under paragraph two, but it does not establish a right to future payments after the twelve-month period or determine appellant's liability therefor.

In fixing the fee on a *per diem* basis, the trial court calculated on a basis of 13 man-days spent in preparation and trial while the testimony is that 17 or 18 man-days were thus involved. In view of our former decisions, we do not think it sound to fix the fee solely on such basis—particularly where several members of a firm are involved, as here. Certainly the skill, work and time spent are to be considered along with the amount of recovery and the fact that a right to seek future recovery has been preserved. Upon consideration of all the circumstances, we have concluded that the fee allowed is somewhat excessive and should be reduced to $1,000.

The judgment is accordingly modified by reducing the attorneys' fee to $1,000. In all other respects the judgment is affirmed.

ROBINSON, J., dissents to modification.

ROBINSON, J. This case was tried twice. It required two days in the first trial and three days the second time. Several of the witnesses lived at Conway and other places, although the case was tried at El

Dorado. It necessarily required time, effort and expense to contact these witnesses and interview them with regard to their testimony. It is not a case where the lawyer could just tell his client to be at the court house on the day of trial with his witnesses. It required considerable time to work up all the law that might be involved and prepare the instructions. It required additional time, effort and ability to present the matter properly to this court. The insured had lost a leg. If his attorneys had lost the case, not only would there have been no recovery at the present time, but there could have been no hope of recovery for future disability.

Last but not least, the appellee proved by several lawyers that a fee of some $1,500 to $2,000 would be reasonable and proper in this case, and their testimony stands uncontradicted.

For these reasons, I respectfully dissent from that part of the majority opinion reducing the attorney's fee.