**David H. CURRAN, Plaintiff,**

v.

**SECURITY INSURANCE COMPANY, Defendant.**

**Civ. A. No. 847.**

United States District Court
W. D. Arkansas,
Hot Springs Division.
July 6, 1961.

Wootton, Land & Matthews, Hot Springs, Ark., for plaintiff.

Mehaffy, Smith & Williams, Little Rock, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This case is before the court on plaintiff's complaint for declaratory judgment against the defendant.

On March 27, 1961, Curran Development Company, Inc., and the present plaintiff, David H. Curran, filed their complaint against the defendant, Security Insurance Company, for a declaratory judgment, adjudging the defendant obligated under the terms of its policy to defend a suit filed against David H. Curran in the Circuit Court of Garland County, Arkansas, and to pay any judgment that might be recovered against him within the limits of said policy; that an attorney's fee be awarded against the defendant, and for all of its costs herein expended and for such other and further relief as to the court may seem just and proper.

On May 18, 1961, the defendant filed its motion for summary judgment.

On May 26, 1961, the Curran Development Company, Inc., and the present plaintiff, David H. Curran, filed their response to the motion.

In the hearing on the motion for summary judgment, it was admitted that the defendant, on April 6, 1959, issued to Curran Development Company, Inc., a manufacturers and contractors policy, No. 631423, wherein it insured Curran Development Company, Inc., together with its officers, stockholders and directors against any claim arising thereunder in the amount of $50,000 for any claim, and $100,000 for any accident. The policy was delivered and premium paid thereon for a period of one year from the date of its issuance. It was in force at all times material herein.

On the same date the defendant issued and delivered its workmen's compensation policy WC No. 503936, in favor of the Curran Development Company, Inc., and the premium thereon was paid.

On July 8, 1959, Francis E. (Sam) Hall, while in the employ of the Curran Development Company, Inc., received injuries from which he died, under circumstances that resulted in the defendant paying workmen's compensation because of the death. Said payments were and are being made under the provisions of the workmen's compensation policy, and that policy is not involved in the instant case.

On November 3, 1960, Selma Oliver Hall, Administratrix of the Estate of Francis E. (Sam) Hall, deceased, filed her suit in the State Court, Civil No. 9330, wherein the present plaintiff, David H. Curran, was named defendant and damages in the total sum of $284,787.50 were demanded by reason of the alleged negligence of the defendant, David H. Curran.

On March 10, 1961, the attorneys for the Curran Development Company, Inc., and for the present plaintiff, David H. Curran, wrote the present attorney for the defendant that David H. Curran was named as party defendant in the suit filed by Selma Oliver Hall, Administratrix, in the State Court, and was seeking a judgment against him for damages as hereinbefore stated; that at the time the letter was written Mr. Curran had not been served with summons in the case, but that in the event he was served with summons, that he expected the defendant to defend the action in the State Court in his behalf and to pay any judg-

ment that might be rendered therein within the limits of the policy.

On March 24, 1961, the attorney for the defendant advised the attorneys for the present plaintiff, David H. Curran, that it was his client's contention "that the alleged negligent activities of Colonel Curran (David H. Curran is a retired Lt. Col.) which were a proximate cause of Mr. Hall's death, were not the duties of an executive officer so as to constitute him an insured under the policy."

In the complaint for the declaratory judgment, the then plaintiffs, in numbered paragraph 12 of the complaint alleged:

"Plaintiff David H. Curran states that he is the only executive officer of Curran Development Company, Inc.; that he has charge of and actively participated in the construction of residences on property owned by the corporation and is the sole executive officer entrusted with its management and was acting within the scope of his duties as such at the time of the death of Francis E. Hall."

In the manufacturers and contractors policy, No. 631423 involved herein, the term "insured" is defined in Section III of the policy as follows:

"With respect to the insurance under coverages A, B and D the unqualified word 'insured' includes the named insured and also includes any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the named insured. If the named insured is a partnership, the unqualified word 'insured' also includes any partner therein but only with respect to his liability as such."

Under "Exclusions" appear the following:

"This policy does not apply:

\* \* \* \* \* \*

"(j) under coverages A and D, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

"(k) under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured;"

The motion for summary judgment was disposed of on June 1, 1961, by a written opinion, sub nom. Curran Development Company, Inc., and David H. Curran v. Security Insurance Company, D.C., 194 F.Supp. 727, in which the court held that the then plaintiff, Curran Development Company, Inc., had no controversy with the defendant; that the corporation was not a party defendant in the personal injury suit pending in the state court, and that as between the then plaintiff corporation and defendant, the defendant's motion for summary judgment was granted. However, the court denied the motion of the defendant for summary judgment against the plaintiff, David H. Curran, and in the opinion denying the motion for summary judgment as against the plaintiff, David H. Curran, the court said:

" \* \* \* However, the question of whether an executive officer of a corporation is performing duties as such or as an employee of the corporation is primarily one of fact, and will depend to a great extent on the makeup of the corporation, the duties assigned to the individual officer, and naturally the functions actually being performed by him with the consent of the corporation. Therefore, since the status of David H. Curran is a disputed question of fact, the court cannot enter a summary judgment on this basis."

After the disposition of the motion for summary judgment, there was left the claim of the plaintiff, David H. Curran, on the complaint filed, as hereinbefore stated, on March 27, 1961, against the defendant for a declaratory judgment.

The trial was held on June 30, 1961, and at the conclusion of the trial, the case was submitted and taken under advisement. Prior to the trial of the claim of David H. Curran on the merits, the attorneys for the parties had submitted rather extensive briefs, and the attorney for the defendant submitted to the court an additional memorandum brief. The briefs together with all of the testimony and exhibits thereto, have been considered, and the case is now ready for final disposition.

David H. Curran, often referred to as Colonel Curran, had worked for approximately 14 years as an engineer for an electric company in Kansas City, Missouri. He was a former member of the Air Force, for several years, including service in Washington, D. C. Following his retirement from the Air Force, he was reemployed for approximately two years by the electric company in Kansas City, Missouri. He left the employment of that company, and he and his wife, Margie L. Curran, returned to their home in Brighton, Colorado. Prior to 1959, the plaintiff and his wife became interested in developing property for residential purposes in Hot Springs, Arkansas. The plaintiff located a tract of 15 acres lying along the south shores of Lake Hamilton. He contacted his father, Arthur L. Curran, who was engaged in a similar business in the City of Denver, Colorado. As a result of a conference with his father, a partnership was formed, composed of Arthur L. Curran, and wife, Armeda Curran, the plaintiff, David H. Curran, and wife, Margie L. Curran. The partnership purchased the tract of land and plaintiff, acting for the partnership, began developing it for residences. While the first residence was being built with labor paid by the hour by the plaintiff, who, being an electrician and a skilled workman, not only supervised the construction of the residence but actively worked as a laborer, he, for the benefit of the partnership, applied to J. B. Ezell & Co., local soliciting agents of the defendant for a manufacturers and contractors liability policy of insurance. The local agents did not have the authority to write such policy, and contacted the general agents, Anderson & Newell, of Little Rock, Arkansas, who, after a full inquiry into the affairs of the partnership and the manner and means by which it expected to develop the land, issued a binder. About that time and while the first residence was being built, Arthur L. Curran and wife, the father and mother of plaintiff, visited the plaintiff and his wife in Hot Springs, Arkansas, and after viewing the property and the progress that was being made by the plaintiff, the four of them decided to form a corporation to conduct the business that had been started by the partnership. The Articles of Incorporation were executed April 23, 1959, and provides that the Board of Directors shall adopt the By-Laws for the regulation and management of the affairs of the corporation not inconsistent with the laws of the State of Arkansas or the Articles of Incorporation. The nature of the business of the corporation is stated in the Articles, as follows:

"To carry on the primary business in which the corporation intends to initially engage; to employ engineers, architects, builders and contractors for the purpose of or in connection with the construction, erecting, altering, repairing, improving or doing any other work in connection with any houses or residences, or structures of every kind and description whatsoever; and to manufacture, buy, sell, purchase, distribute, and deal in any and all kinds of building materials, building supplies, or products of any and every kind or character, and to do any and all things necessary and proper to effect such purpose. And also, to engage in any commercial, industrial and agricultural enterprise calculated or designed to be profitable to this corporation and in conformity with the laws of the State of Arkansas, and to generally engage in, do, and

perform, any enterprise, act or vocation that a natural person might, could do, or perform."

Article IV of the By-Laws provides:

"The business and affairs of the Corporation shall be managed by a Board of Three Directors, * * *."

Section 8 of Article V provides:

"The General Manager shall have the authority and exercise such powers as may from time to time be conferred upon him by the Board of Directors."

Section 6 of Article V provides:

"In case of the absence of any officer of the Corporation, or for any other reason that the Board may deem sufficient, the Board may delegate the powers or duties of such officer to any other officer or to any director or employee of the Corporation, for the time being, provided a majority of the entire Board concurs therein."

The plaintiff, David H. Curran, his wife, Margie L. Curran, and Arthur L. Curran were named as Directors, and at the first meeting of the Board, Arthur L. Curran was elected President, the plaintiff, David H. Curran, Treasurer, and his wife, Margie L. Curran, Secretary. The By-Laws were adopted at that meeting, and after their adoption the plaintiff, David H. Curran, was elected General Manager of the corporation. Following his election as General Manager, a resolution was passed providing, "that the General Manager of this corporation hereby has all the powers delegated to him that the Board of Directors presently has and hereby is authorized to do any act that the Board of Directors presently can do."

During the discussion relative to the formation of the corporation, the plaintiff discussed the matter of obtaining the same kind of insurance for the corporation with the local agents, J. B. Ezell & Co., who had procured the binder from the general agents of the defendant covering the operation of the partnership. After the conference, Mrs. Minna Ezell, one of the local agents, wrote the general agents of the defendant as follows:

"Re: Curran Development Co.

"You might as well rewrite WC and Liability policies for the above captioned.

"They are going to incorporate— Mr. A. L., Dave and Marge will be the officers.

"Dave will still be doing all the work that he planned to do and will have full charge of all the work done in this development, taking or doing whatever work he sees needs pushing along, so be sure that he is covered as an officer of the incorporation, and whatever it takes to protect him and the business.

"As I told you over the telephone —I'm sorry to pester you with questions—but when someone depends on you and leaves the coverage up to you—I just have to be sure—Col. C. depends on me and I in turn depend on you.

"There have been no losses, so if it is agreeable to you and to the Company, I'm sure that issuing the policy effective April 6, 1959 will be agreeable to everyone concerned— the filing of the papers or what have you will not be completed by that time, possibly—so keep both a partnership and an incorporated deal covered."

The letter to the general agents was directed specifically to Charles K. Hughes, in charge of the office of the general agents, and upon receipt of the letter, the policy in issue was issued and mailed to the local agents for their countersignature.

The general agents were fully advised of the type of the operations of the partnership and the activities of the plaintiff, and knew that the parties desired and expected that the operation of the corporation and the activities of the plaintiff not only as a desk man but also as a physically working superintendent be fully covered by the policy. In fact, Mrs. Ezell testified that the general agents knew

exactly the type of work that was done by the plaintiff for the partnership, and that it was the intention to cover such activities as would be engaged in by the plaintiff when the corporation was formed.

The attorneys for the defendant strenuously objected to the admission in the evidence of the letter of Mrs. Ezell, and also to her ore tenus testimony relative thereto. The court deferred ruling on the objection until the consideration of the merits of the case, but is now convinced that the letter of Mrs. Ezell and her testimony relative to the intentions of the parties were relevant and competent.

Section II of the policy provides:

"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the Company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient: * * *"

The defendant contends that the purpose of the contract of insurance was to insure only the specified legal liabilities of the corporation, and to further the intents and purposes for which the contract was bought and paid for, the defendant further agreed to insure the legal liabilities of the insured corporation's " 'executive officer * * * acting within the scope of his duties as such,' for, in such event, liability would also attach to the insured corporation for the negligent acts of such executive officer."

The plaintiff was not only the Treasurer but also General Manager, a Director and a Stockholder, and the term "insured" includes "any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the named insured."

The plaintiff in his capacity as Treasurer and General Manager of the corporation was the chief executive officer of the corporation. He was the officer in complete charge of the affairs of the corporation, and the success or failure of the building operations depended upon his efforts. The other two directors and all the stockholders of the corporation realized this, and the defendant insurance company realized these facts when the policy was written. Everyone connected with the corporation, including the defendant, through its general agents, knew that the plaintiff was not only in name an executive officer but was a physically working superintendent in the building operations. The general agents of the defendant were specifically requested by the local agents "to be sure" and cover all of the activities of the plaintiff, David H. Curran. Certainly the plaintiff was doing work that the "named insured" had authorized him to do, and the court cannot say that the activity of the plaintiff while on a job as general manager, and at the same time doing manual work, is not covered.

The defendant strenuously argues that the clause, "executive officer * * * acting within the scope of his duties as such" "is designed to limit the existence of coverage of officers, directors and stockholders to activities (1) within the scope of the business of the named insured corporation, and (2) to those activities of officers, directors and stockholders acting as such officers, directors and stockholders. Otherwise the words 'as such' have no meaning in the insurance contract"; that if it were not for the language now relied upon by it, every stockholder—laborer, machinist, carpenter, electrician, trainman, etc.,—would be insureds under the policy, and such was not the intent of the defendant "which seeks to protect the insured corporation's liabilities, nor the insured corporation's intent in purchasing the insurance in the name of the corporation."

The insured corporation had a limited capital. Article VII of the Articles of Incorporation provides that "the amount of paid-in capital with which this corporation will begin business is $300.00." If the business was to succeed, it was necessary for the plaintiff, a skilled workman, to not only superintend the construction of buildings, but to do physical labor. He had been doing it when the parties were operating as a partnership, and the defendant had issued a binder which according to the evidence protected not only the partnership but also the individual members of the partnership in that business. The mere fact that when the corporation was organized, plaintiff was elected Treasurer did not relieve him of his responsibility to carry on the business in the same manner as he had done for the partnership.

Section 5 of Article V of the By-Laws prescribes the general duties of the treasurer of the corporation. Evidently the duties of the treasurer were not burdensome when the limited capital and operations of the corporation are considered, and it was further provided that, in addition to the usual duties of the treasurer, he "shall perform such other duties as this code of By-Laws may require or the Board of Directors may prescribe." Section 8 of the same article provides:

"The General Manager shall have the authority and shall exercise such powers as may from time to time be conferred upon him by the Board of Directors."

Thus, under the general authority of the Board of Directors, the duties and authority of the plaintiff were fixed and he was acting "within the scope of his duties as such" at the time Francis E. (Sam) Hall met his death.

The complaint filed by the Administratrix of the Estate of Francis E. (Sam) Hall in the state court alleges in numbered paragraph 5 that at the time of the death of Hall, he was employed by the Curran Development Company, Inc.; that the plaintiff here, David H. Curran, "participated in the performance of the electrical work on the job site where the decedent was electrocuted * * *." The complaint alleges in numbered paragraph 7, "defendant [plaintiff here] was employed by the Curran Development Company. Defendant (Col.) David H. Curran, an individual, is a third party, under the statutes setting out the Arkansas Workmen's Compensation law."

In numbered paragraph 8 it is alleged:

"Defendant (Col.) David H. Curran was negligent and his negligence was a proximate cause of the death of Francis E. (Sam) Hall * * *."

The corporation accepted the policy as written, fully confident that the language used by the defendant company, in writing the policy, would afford full protection to "the named insured" and any of its officers, directors and stockholders while discharging his duties as required by the Board of Directors "within the scope of his duties as such."

It is not denied that the plaintiff was acting within the scope of his duties as prescribed and required by the Board of Directors. Certainly, a liberal construction of the language used by the defendant in the light of all the facts known to the defendant at the time the policy was purchased entitles the court to hold that the activities of the plaintiff were covered by the policy.

No Arkansas cases have been cited by counsel, and none have been discovered by the court directly in point on the issues here presented. However, the entire problem was thoroughly discussed by Judge Weber in General Aviation Supply Co. v. Insurance Co. of North America, D.C.E.D.Mo.1960, 181 F.Supp. 380. In discussing this question at page 383, Judge Weber said:

"The authorities are divided. See the discussion and citation at 50 A. L.R.2d 78, loc. cit. 97, § 6. One group holds that an employee of an insured, other than the insured seeking protection, is not within the language of the exclusion. The other group holds that if the injured party is an

employee of any person who is insured under the policy, the exclusion is applicable, although he may not have been an employee of the person committing the tort.

\*   \*   \*   \*   \*   \*

"If the insurer wishes to further exclude its liability, it could clearly so state in its contract and its failure to do so should be strictly construed. Especially is this true when the policy contains a severability clause, for there it can be implied that the insurer is actually recognizing a separate obligation to others, distinct and apart from the obligation it owes to the named insured. For a similar view and discussion see Vol. 24, University of Kansas City Law Review, 'Who is "The Insured" ', pp. 65, 66, 72, 1956."

The policy in question, like the one in the General Aviation Supply Co. case, supra, has a severability of interest clause, which reads as follows:

"The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

The case of New v. General Casualty Co. of America, D.C.M.D.Tenn.1955, 133 F.Supp. 955, is of interest. In its conclusions Nos. 11 and 12 at page 958, the court said:

"11. The Court further concludes that it was not intended by the contracting parties that the omnibus clause could be used to decrease the insurance protection afforded the named insured by the policy. The omnibus clause, or definition of insured, merely causes the insurance to cover persons other than the named insured. This clause creates liability insurance in favor of another and places no limitation on the protection purchased by the named insured.

"12. The named insured in this policy has purchased and is entitled to protection against the claims of all persons with whom he has no employment relationship and who is to him a member of the public."

The defendant has cited Davis v. Perryman, 1956, 225 Ark. 963, 286 S.W.2d 844; Arkansas Amusement Corp. v. Kempner, 1930, 182 Ark. 897, 33 S.W.2d 42; Arkansas Amusement Corp. v. Kempner, 8 Cir., 1932, 57 F.2d 466; Brook's, Inc. v. Claywell, 1949, 215 Ark. 913, 224 S.W.2d 37, which the court has read, but does not believe any of the above cases are controlling in any respect.

The defendant has also cited White v. Arnold Wood Heel Co., 90 N.H. 315, 8 A.2d 737, and Rowe v. Rowe-Coward Co., 208 N.C. 484, 181 S.E. 254, which the court has had no opportunity to study, but from the reference made by defendant, the court feels that they are not at all decisive.

It is apparent that the exclusions in the policy do not apply to the plaintiff. They were placed in the policy only to exclude claims for compensation under workmen's compensation laws or similar statutes, and have no bearing whatsoever upon the issue presented in this case.

In Morrison-Knudsen Co. v. Phoenix Ins. Co. of Hartford, 8 Cir., 1949, 172 F. 2d 124, Chief Judge Gardner, speaking for the court, at page 127 said:

"This policy was on a form prepared by the defendant and in case of any doubt or uncertainty as to its meaning, it must be interpreted against the party who has drawn it. Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S.W. 847, 54 A.L.R. 600; Hope Spoke Co. v. Maryland Casualty Co., 102 Ark. 1, 143 S.W. 85, 38 L.R.A.,N.S., 62, Ann. Cas.1914A, 268."

In St. Paul Fire & Marine Ins. Co. v. Kell, Ark.1959, 328 S.W.2d 510, 512, the court said:

"It is a well settled rule of this Court that in construing contracts of insurance, where a provision of an insurance policy is susceptible of two

equally reasonable constructions, one favorable to the insurer and the other to the insured, the latter will be followed: Industrial Mutual Indemnity Co. v. Hawkins, 94 Ark. 417, 127 S.W. 457, 29 L.R.A.,N.S., 635; Wolff v. National Liberty Ins. Co. of America, 191 Ark. 146, 83 S.W.2d 836; Phoenix Assurance Co. v. Loetscher, 215 Ark. 23, 219 S.W.2d 629; Washington Fire & Marine Ins. Co. v. Ryburn, 228 Ark. 930, 311 S.W.2d 302.

"In the case of Travelers Protective Association of America v. Sherry, 192 Ark. 753, 94 S.W.2d 713, this Court also said:

" 'In all contracts of insurance of dubious or doubtful meaning, the construction should be placed upon them most favorable to the insured; but where the provisions are unambiguous they must be construed according to their plain meaning.' "

In the prayer of the complaint the plaintiff, in addition to praying that the court enter a declaratory judgment adjudging the defendant obligated under the terms of its policy to defend the suit against David H. Curran, and to pay any judgment that may be recovered against him within the limits of the policy, also asked that "an attorney's fee be awarded against the defendant, for all of its costs herein expended and for such other and further relief as the court may deem just and proper."

At the trial of the case, neither the plaintiff nor the defendant offered or introduced any testimony to establish the amount of the attorney's fee that should be fixed and awarded in the event the plaintiff prevailed.

Ark.Stat.Ann., Sec. 66–3239 (1959 Supp.), provides:

"In all suits in which the judgment or decree of a court is against a * * * liability insurance company, either in a suit by it to cancel or lapse a policy or to change or alter the terms or conditions thereof in any way that may have the effect of depriving the holder of such policy of any of his rights hereunder, or in a suit for a declaratory judgment under such policy or in a suit by the holder of such policy to require such company to reinstate such policy, such company shall also be liable to pay the holder of such policy all reasonable attorneys' fees for the defense or prosecution of said suit, as the case may be, which fees shall be based on the face amount of the policy involved; said attorneys' fees to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed as a part of the costs therein and collected as other costs are, or may be by law collected."

In view of the conclusion that the court has reached, the plaintiff is entitled to recover a reasonable attorney's fee, and the court, even in the absence of testimony as to the amount of such fee, may fix the same based upon the record before it.

In 5 Am.Jur., Attorneys, Sec. 190, p. 376, it is stated:

" * * * The services of an attorney, when rendered in litigation before the same court which is passing upon the value of such services, may, of themselves, constitute evidence from which the court alone, unaided by opinion of others as to value, or even in defiance of opinion evidence, may reach a conclusion."

In the same volume, Sec. 198, beginning at page 379, it is stated:

"In the absence of an express contract of employment between an attorney and his client fixing the amount of the attorney's compensation, it is generally held that the attorney is entitled to what his services are reasonably worth, or what has usually been paid to others for similar services. The determination of this depends largely upon the circumstances of the particular case. Among other things to be considered are the importance and results of the

case, the difficulties thereof, the degree of professional skill and ability required and exercised, the skill, experience, and professional standing of the attorney, and the prominence or character of the parties, where it affects the importance of the litigation, as well as the amount or values involved or recovered. · The value of the services of an attorney is necessarily to be determined by many considerations besides the mere time visibly employed in the conduct of a suit, although in the absence of other evidence, the court must be guided in estimating the value of attorney's services by the time or amount of labor performed as indicated by the record."

In Federal Oil Marketing Corp. et al. v. Cravens, 8 Cir., 1931, 46 F.2d 938, at page 940, the court said:

" *   *   * A judge of a trial or appellate court is not bound by the opinion of experts as to attorney fees. He is an expert himself, and knows as well as a legal expert what are reasonable attorney fees. This court has as much knowledge of the legal work done in the Oakes-Vitek intervention as the expert witnesses had."

In Slayton v. Russ, 1943, 205 Ark. 474, at page 478, 169 S.W.2d 571, 146 A.L.R. 64, the court approved the quotation from 5 Am.Jur., Attorneys, Sec. 190, p. 376.

In John Hancock Mutual Life Ins. Co. v. Magers, 1939, 199 Ark. 104, at page 114, 132 S.W.2d 841, at page 846, the court held that a reasonable fee is to be determined by the particular circumstances that appear in the case, and stated:

"It should not only be commensurate with time and amount of work required but also with the ability present and necessary to take care of or meet the issues that arise. The fee is not fixed for, nor by the attorney, but for the insured and by the court. To be reasonable, it should not be so small or low, that well prepared attorneys would avoid that class of litigation or fail in the employment of sufficient time for thorough preparation, but should be for the purpose of compensating the insured in engaging counsel thoroughly competent to protect his interests."

After considering all the facts and circumstances and other relevant facts, the court is of the opinion that the plaintiff should recover $2,000 as a reasonable fee for the prosecution of the suit, which amount, of course, may be modified in any manner in the event of an appeal to the U. S. Court of Appeals for the Eighth Circuit.

Under the provisions of the policy, the defendant is obligated to protect the plaintiff against liability within the limits of the policy and to defend the suit that is now pending in the Circuit Court of Garland County, Arkansas, against the plaintiff. Cf. Bruce v. Travelers Ins. Co., 5 Cir., 1959, 266 F.2d 781.

In addition, the plaintiff should recover from the defendant the sum of $2,000 as a reasonable attorney's fee, to be taxed and collected along with all court costs.

Judgment in accordance with the above is being entered today.